## Case No. 3,619.

### In re DAVIS.

[See Case No. 3,620.]

## Case No. 3,620.

### In re DAVIS.

[1 Sawy. 260; [1] 4 N. B. R. 715; 8 N. B. R. 167.]

District Court, D. California. Aug. 13, 1870.

BANKRUPTCY—JURISDICTION OF ORDINARY TRIBUNALS.

The ordinary tribunals are not deprived, by mere force of an adjudication in bankruptcy, of jurisdiction over suits against the bankrupt. The proceedings in such suits may be arrested or controlled by the bankruptcy court, when necessary for the purposes of justice; but in the absence of such interference, the jurisdiction of the ordinary tribunals remains unimpaired and their judgments are valid.

[Cited in Hudson v. Schwab, Case No. 6,835; Kimberling v. Hartly, 1 Fed. 575.]

[In bankruptcy. In the matter of Irwin Davis.]

Thompson & Wilson, for bankrupt.
Hambleton & Gordon, for assignee.
W. W. Cope, for respondent.

HOFFMAN, District Judge. In this case, a temporary injunction was granted, on the petition of the assignee, against certain creditors of the bankrupt, restraining them from prosecuting a suit commenced by them in the fifteenth district court, to foreclose a mortgage held by them as security for a debt. A rule was also entered, requiring them to show cause why a perpetual injunction should not issue as prayed for by the assignee. On the return day of this rule the parties appeared, and the questions presented by the case were elaborately argued.

The ground on which the assignee desires the interposition of the court is, that it will be for the interest of the estate that the mortgaged property be sold at private sale, subject to the mortgage, and that by this means the sum of $1,500, stipulated in the mortgage, to be paid as attorney's fees, in case of foreclosure, may be saved. It is suggested, on the other hand, that the property is subject to various liens subsequent to that of the mortgage—that these liens are held by parties absent from the state, and not within reach of the process of this court; and that, to foreclose and cut off these liens and make a clear title to the purchaser, they must be brought in by publication and constructive service, as provided for by the laws of this state. The amount of the debt and the validity of the lien of the mortgage are not contested; nor is it suggested that any unfair advantage is sought by the proceedings in the state court.

The right of the mortgagees to the benefit of their security being thus undisputed, and

---

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

no application being made to compel the creditors to come into this court to enforce the claims, there would seem no reason for staying the proceedings in the state court unless the property is about to be immediately sold at a sacrifice. But of this there is no apprehension. The notices, etc., by publication will require at least six weeks, and the defaults of absent parties and a decree of foreclosure, order of sale, etc., cannot probably be entered in less than two months. During all this time the proceedings will be under the control of this court, and if the assignee finds an opportunity to make an advantageous sale, he can apply to the court for leave to do so. If the sale be really advantageous the creditors will have no motive to resist it, their only object being to collect their debt.

It will perhaps be found better for the interests of the estate to suffer the foreclosure suit to proceed in any event. For the proposed purchaser could bid at the sale, receive a clear title from the sheriff, disencumbered of all junior liens in the hands of all persons properly made parties to the suit; and the assignee, and even the mortgagees, if desired, might unite in the deed. The title being thus made perfect, it is to be presumed that the largest possible price would be obtained.

But whatever course it may hereafter be deemed advisable to adopt, I see no reason for now arresting the proceedings of the creditors.

The temporary injunction heretofore issued will therefore be dissolved—but with the reservation to this court of full power and authority to interfere, and to control or arrest the proceeding whenever it shall appear expedient for the interests of all concerned that it should exercise the power given to it by law, to assume the exclusive administration of this portion of the bankrupt's estate.

As this disposition of the matter is understood to be satisfactory to the assignee, it is perhaps unnecessary to consider the question raised at the hearing. But as the counsel have argued those questions at length, and have requested of the court an expression of its opinion, I shall proceed to state the conclusions at which I have arrived.

It is contended that the court of bankruptcy has not only complete jurisdiction over the estate of the bankrupt, and the authority to determine all cases and controversies between the bankrupt and his creditors, to ascertain, liquidate and enforce liens, to adjust priorities and conflicting interests of all parties, to marshal and dispose of and distribute, assets, etc., etc., but that this authority is exclusive, and that the adjudication in bankruptcy, proprio vigore, divests the ordinary tribunals of all jurisdiction over the bankrupt or his estate, and that all further proceedings before those tribunals are coram non judice, and void, notwithstand-

ing that the court of bankruptcy has refused to enjoin the parties from further proceeding in them, and notwithstanding that it may clearly be most just, convenient and for the interests of all parties that the suit before the ordinary tribunals should be prosecuted to a final judgment.

I am clearly of opinion that this view cannot be sustained, and that it is not the intention of the act to deprive the court of the right to avail itself of the aid of the ordinary tribunals, whenever convenience and the interests of the parties may require.

There is, unquestionably, much force in the criticisms contained in the dissenting opinion of Mr. Justice Catron, in the cases of Ex parte Christy, 3 How. [44 U. S.] 322, and Norton's Assignee v. Boyd, Id. 437.

In the former case, the supreme court sustained the jurisdiction of the district court to entertain a bill to set aside a sale under a decree of foreclosure rendered in the state court before the adjudication in bankruptcy.

Mr. Justice Catron contends that such a proceeding could only be sustained on the ground that the sale under the decree of foreclosure was absolutely void—and that the mortgage lien on which the decree was entered could be enforced only in the bankruptcy court. If this be the true construction of the opinion of the supreme court, it would go far to sustain the proposition contended for in this case, viz.: that the adjudication in bankruptcy absolutely divests the ordinary tribunals of jurisdiction over all matters cognizable in the bankrupt court. But the succeeding case of Norton's Assignee v. Boyd, clearly shows that the court did not intend so to decide. In that case, as in the former, a decree of foreclosure had been obtained, and execution issued and levy made, before the adjudication in bankruptcy. The sale took place after the adjudication. The assignee filed his bill to set aside this sale on the ground that the district court of the United States was by the bankrupt law vested with exclusive jurisdiction over all matters pertaining to the settlement of the affairs of the bankrupt, and that the sale made by the state court had transferred no legal title to the property, which still remained that of the bankrupt or his assignee, to be sold or otherwise disposed of under the orders of the district court.

It will be perceived that the question was thus distinctly raised, whether after the adjudication the proceedings in a state court to enforce a lien, were void, and whether the jurisdiction of the bankrupt court was exclusive.

The circuit court dismissed the bill for want of equity, and the supreme court, on appeal, affirmed the decision. In the opinion of the circuit court, which is approved and adopted by the supreme court, the opinion is expressed that on grounds of expediency the jurisdiction of the bankruptcy court should be exclusive, so as to take away from the state court any

jurisdiction in such cases. As to this, the supreme court says: "Upon this subject it is not our province to decide, and we have no desire to express an opinion upon it."

Mr. Justice Catron contends that this decision is inconsistent with the previous decision in Ex parte Christy [supra]. However this may be, the case is a direct authority for the position that a sale made after an adjudication in bankruptcy, under a decree of a state court to enforce a lien, is not void—and to be treated as such in all cases by the bankruptcy court. And, further, that the supreme court declines to express an opinion whether on grounds of expediency the jurisdiction of the district court should have been made by laws exclusive. That such was the understanding of the court in Ex parte Christy, appears from the language of Mr. Justice Story, in delivering the opinion of the court:

"It is further objected that if the jurisdiction of the district court is as broad and comprehensive as the terms of the act justify according to the interpretation here insisted on, it operates, or may operate, to suspend or control all proceedings in the state courts, either then pending or thereafter to be brought by any creditor or person having an adverse interest to enforce his rights or to obtain remedial redress against the bankrupt or his assets after the bankruptcy. We entertain no doubt that under the provisions of the sixth section of the act [of 1841 (5 Stat. 445)], the district court does possess full jurisdiction to suspend or control such proceedings in the state courts, not by acting on the courts over which it possesses no authority, but by acting on the parties through the instrumentality of an injunction or other remedial proceedings in equity, upon due application made by the assignee and a proper case being laid before the court requiring such interference. Such a course is very familiar in courts of chancery, in cases where a creditor's bill is filed for the administration of the estate of a deceased person, and it becomes necessary or proper to take the whole assets into the hands of the court for the purpose of collecting and marshalling the assets, ascertaining and adjusting conflicting priorities and claims, and accomplishing a due and equitable distribution among all parties in interest in the estate. Similar proceedings have been instituted in England in cases of bankruptcy, and they were, without doubt, in contemplation of congress as indispensable to the practical working of the bankrupt system. But because the district court does possess such a jurisdiction under the act, there is nothing in the act which requires that it should in all cases be absolutely exercised. On the contrary, where suits are pending in the state courts, and there is nothing in them which requires the equitable interference of the district court to prevent any mischief or wrong to other creditors under the bankruptcy, or any waste or misapplication of the assets, the parties may well be permitted to proceed in such suits and consummate them by proper decrees and judgments, especially where there is no suggestion of fraud or injustice on the part of the plaintiffs in those suits. The act itself contemplates that such suits may be prosecuted and further proceedings had in the state courts, for the assignee is, by the third section, authorized to sue for and defend the property vested in him under the bankruptcy, subject to the orders and directions of the district court, and all suits at law and in equity then pending in which such bankrupt is a party, may be prosecuted and defended by such assignee to a final conclusion in the same way and manner, and with the same effect as they might have been by the bankrupt." "So that here the prosecution and defense of any such suits in the state courts is obviously intended to be placed under the discretionary authority of the district court, and in point of fact, as we all know, very few, comparatively speaking, of the numerous suits pending in the state courts at the time of the bankruptcy, ever have been interfered with, and never unless some equity intervened which required the interposition of the district court to sustain or protect it."

The act of 1867 gave a legislative sanction to this exposition of the duties and jurisdiction of the district courts in bankruptcy, and the language of the supreme court is adopted and embodied in the act.

Congress must also have been aware of the suggestion of the circuit judge, in Norton's Assignee v. Boyd [supra], that on grounds of expediency the jurisdiction of the district court ought to be exclusive, a suggestion which the supreme court declined to approve. But the act contains no provision to the effect suggested by the circuit judge, and it is evident that it was intended to leave the jurisdiction as it stood under the act of 1841, as expounded by the supreme court.

The provision in the fourteenth section, which authorizes the assignee to prosecute and defend all suits pending at the time of the adjudication in which the bankrupt is a party, is inconsistent with the idea that, by the adjudication, the ordinary tribunals are divested of all jurisdiction over the bankrupt or his estate—while to attribute such an effect to the adjudication would be productive of extreme hardship and injury to the bankrupt, or it might to strangers in no way connected with him.

At the time of the bankruptcy, suits may be pending to determine the title to land, to enforce trusts, to foreclose mortgages, to effect partitions, to take accounts of partnerships, to remove clouds from titles, etc., etc., to which the bankrupt was a necessary or indispensable party. The litigations may have been protracted and expensive. To hold that by the fact of adjudication, all power of the ordinary tribunals to bind the bankrupt or his estate by a final judgment or decree in any such suits is taken away,

would be to subject the parties to an intolerable hardship, for no conceivable object. Nor is it clear what relief could be afforded by the bankruptcy court, for the property in litigation might be in another district and beyond the jurisdiction of the court, and the parties might have no connection with the bankrupt either as debtors or creditors, and thus be in no way concerned in the bankruptcy proceedings.

In the case of Sedgwick v. Menck [Case No. 12,616], where the bankrupt had, long previously to the passage of the act, made an alleged fraudulent assignment of his property and creditors had filed bills to set aside the assignment, which suits were pending at the time of the bankruptcy, Judge Nelson refused to interfere, observing, that the question involving "the right to the property is in the state court, where it belongs, and the decision of that court will be conclusive upon the right. If in affirmance of the judgment of the court below, the property will be applied to the satisfaction of the judgments on the creditors' bill; if in favor of the validity of the assignment, it will take the direction of the trusts created in the assignment. The right to this property attached long before the assignment in bankruptcy, and before even the passage of the bankrupt law." This case affords a striking illustration of the injustice and inconvenience of an opposite doctrine.

The provision in the twenty-first section, that no creditor whose debt is provable under the act shall be allowed to prosecute to final judgment any suit at law or in equity therefor against the bankrupt, was evidently intended merely to subject such suits to the control of the bankruptcy court, and to enable that court to stay them "whenever required, to prevent mischief or wrong to other creditors or waste or misapplication of assets." But it was not intended to declare, that the adjudication in bankruptcy proprio vigore should divest the ordinary tribunals of jurisdiction, and that all subsequent proceedings should be coram non judice and void, even when taken with the assent of the bankruptcy court and when clearly necessary to protect and enforce the rights of third parties.

The provision, that the suit shall be stayed by the bankruptcy court until the determination of the question of discharge, provided there be no unreasonable delay on the part of the bankrupt in endeavoring to obtain his discharge, and provided, that if the amount due the creditor is in dispute, the suit may, by leave of the court in bankruptcy, proceed to judgment for the purpose of ascertaining the amount due, clearly indicate that congress did not intend to divest, in all cases, the ordinary tribunals of jurisdiction, after an adjudication in bankruptcy; and the provision authorizing the assignee to defend all suits pending against

the bankrupt, shows that it was contemplated that such suits might be continued and carried to judgment after the adjudication and the appointment of an assignee.

On the whole, my opinion is, that the jurisdiction of the ordinary tribunals over suits to which the bankrupt is a party, is not taken away by mere force of the adjudication; that the bankruptcy court has jurisdiction to suspend or control such proceedings, by acting on the parties; but that, in the absence of such interference, the jurisdiction of the state courts remains unimpaired and their decrees and judgments are valid and effectual.